IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRENDA S.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 22 C 4796 |
| v. | ) |
| | ) Magistrate Judge Gabriel A. Fuentes |
| MARTIN O'MALLEY, | ) |
| Commissioner of Social Security,[2] | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER[3]

Before the Court is Plaintiff Brenda S.'s motion to reverse and remand the Administrative Law Judge's ("ALJ") decision denying her application for disability benefits (D.E. 15) and Defendant's response seeking affirmance of the ALJ's decision (D.E. 19).

## I.  Procedural History

Plaintiff applied for disability insurance benefits ("DIB") in June 2021, alleging a disability onset date of March 12, 2021; her date last insured is December 31, 2023. (R. 61, 62.) The ALJ held a hearing on November 30, 2021, and on January 28, 2022, issued a written decision denying

---

[1] The Court in this order is referring to Plaintiff by her first name and first initial of her last name in compliance with Internal Operating Procedure No. 22 of this Court. To the extent the Court uses pronouns in this order, the Court uses those pronouns used by the parties in their memoranda.

[2] The Court substitutes Martin O'Malley for his predecessor, Kilolo Kijakazi, as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) (a public officer's successor is automatically substituted as a party).

[3] On September 21, 2022, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was reassigned to this Court for all proceedings, including entry of final judgment. (D.E. 8.)

Plaintiff's application, finding her not disabled under the Social Security Act (the "Act").[4] This appeal followed.

## II.     ALJ Opinion

The ALJ analyzed Plaintiff's claim using the Social Security Administration's ("SSA") five-step sequential evaluation process. At Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (R. 15.) At Step Two, the ALJ determined that Plaintiff had the severe impairments of fibromyalgia, obesity, left foot pes planus with joint instability, migraine headaches, depression, and anxiety. (R. 16.) At Step Three, the ALJ concluded that Plaintiff's impairments, alone or in combination, did not meet or medically equal the severity of one of the SSA's listed impairments. (*Id.*) In making that finding, the ALJ conducted a Paragraph B analysis and determined that Plaintiff had a mild limitation in understanding, remembering and applying information, a mild to no limitation in interacting with others, a moderate limitation in concentrating, persisting, and maintaining pace, and a mild limitation in adapting and managing herself. (R. 17-18.)

Next, the ALJ assigned Plaintiff a residual functional capacity ("RFC") to perform light work except that she can frequently climb ramps/stairs, balance, stoop, crouch, kneel, and crawl; never climb ladders/ropes/scaffolds or experience exposure to loud noises; and can understand, remember, and carry out simple job instructions in a routine work setting with few, if any, changes. (R. 19.) At Step Four, the ALJ concluded that Plaintiff could not perform her past relevant work (R. 25), but at Step Five found that there were jobs that existed in the national economy that she could perform, and that she was not disabled under the Act. (*Id.*)

---

[4] The Appeals Council subsequently denied review of the opinion (R. 1), making the ALJ's decision the final decision of the Commissioner. *Butler v. Kijakazi*, 4 F.4th 498, 500 (7th Cir. 2021).

**III.     Legal Standard**

An ALJ's decision will be affirmed if it is supported by "substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. As the Seventh Circuit has made clear, ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). "All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id.* at 1054. The Seventh Circuit added that "[a]t times, we have put this in the shorthand terms of saying an ALJ needs to provide a 'logical bridge from the evidence to his conclusion.'" *Id.* (citation omitted). The Seventh Circuit further has clarified that district courts, on review of ALJ decisions in Social Security appeals, are subject to a similar minimal articulation requirement: "A district (or magistrate) judge need only supply the parties . . . with enough information to follow the material reasoning underpinning a decision." *Morales v. O'Malley*, 103 F.4th 469 (7th Cir. 2024). The district court's review of the ALJ's conclusions "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute its judgment for the ALJ's determination." *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024) (internal quotations omitted).

**IV.     Substantial Evidence Supported the ALJ's Decision.**

Plaintiff argues that the ALJ failed to properly analyze her physical RFC in conjunction with the requirements of SSR 96-8p, that she did not properly account for Plaintiff's moderate

3

limitations in concentration, persistence, and pace, and that her assessment of Plaintiff's subjective symptoms was not supported by substantial evidence and did not comply with SSR 16-3p. We will address each argument in turn.

    A.    **The ALJ's Physical RFC Was Supported by Substantial Evidence.**

Plaintiff's first argument is that by discounting the opinions of the non-examining state agency doctors, who opined Plaintiff could perform a reduced range of medium work, and also rejecting the opinion of her treating doctor, who opined that Plaintiff had disabling limitations, the ALJ was left with an "evidentiary deficit," which he impermissibly filled by constructing a "middle ground" RFC. (D.E. 16: Pl. Mem. in Support of Remand, at 2). But this is not what happened. Instead, the ALJ explained that he did not find the state agency opinions "fully persuasive" and that he would give Plaintiff "the benefit of every due consideration," and restrict her RFC to the light level to accommodate the combined effect of Plaintiff's impairments "as well as the intermittent flaring of pain and mental fogginess common with fibromyalgia." (R. 22.) That is, the ALJ did not reject the state agency opinions outright; he adjusted them based on additional evidence from the record.

The state agency doctors opined that Plaintiff could perform a reduced range of medium work, specifically that she could lift or carry up to 50 pounds for up to one-third of an 8-hour workday and lift and carry up to 25 pounds for up to two-thirds of an 8-hour workday, and was able to stand and/or walk, or sit for about 6 hours in an 8-hour workday. (R. 70.) The doctors further found that Plaintiff had no limitations for pushing and pulling, could frequently climb ramps, stairs, ladders, ropes, and scaffolds, could frequently stoop, kneel, crouch, and crawl, had unlimited ability to balance, and should avoid concentrated exposure to noise. (R. 70-71.)

As described above, the ALJ then reduced this RFC from the medium to light level and accepted many of the opinions' postural limitations, but eliminated Plaintiff's ability to climb ladders, ropes, and scaffolds. That the ALJ added these additional limitations to account for Plaintiff's own testimony and symptoms does not mean that his determination was not supported by substantial evidence; indeed, the ALJ, not any particular medical expert, "is responsible for assessing [a claimant's] residual functional capacity." 20 C.F.R. § 404.1546(c). Moreover, it entirely permissible for an ALJ to reduce a state agency doctor's RFC to account for additional limitations; indeed, the Seventh Circuit has said that an ALJ's inclusion of greater limitations than those opined by a physician's opinion demonstrates "reasoned consideration of the evidence Plaintiff presented. *Burmester v. Berryhill,* 920 F.3d 507, 510 (7th Cir. 2019).

As many claimants have done in Social Security disability appeals in which claimants attack the degree to which an ALJ explained the basis for a particular RFC or other conclusion, Plaintiff here repeatedly points to the ALJ's supposed failure to build the requisite "logical bridge" (Pl. Mem. at 2, 7-10, 13), as if the required building of a "logical bridge" is somehow a separate requirement that ALJs must meet to have their decisions affirmed, or as if the building of the "logical bridge" is somehow a threshold that the ALJ must cross before a decision can be upheld as supported by substantial evidence.

For example, Plaintiff here argues that the ALJ "did not account for evidence that reflected she would not be able to tolerate the prolonged standing and walking required of light work" (Pl. Mem. at 3) suggesting that the ALJ improperly considered evidence she says demonstrates she is unable to perform light work, and argues that the ALJ "was obligated to weigh evidence reflecting that she could not sustain extended periods of standing or walking." (Pl. Mem. at 5). As a substantive matter, the Court does not agree that the ALJ "did not account" for a line of evidence,

5

in that Plaintiff does not point out any evidence the ALJ "overlooked or discounted."[5] *Morales,* 103 F.4th at 471. The Court finds instead that the ALJ weighed the medical and other evidence concerning Plaintiff's ability to stand and walk before determining she could perform the requirements of light work, just as ALJ's are permitted to do, including:

- Plaintiff's testimony that she was able to stand for 10-15 minute intervals before getting pain in her feet, and is able to walk a block;

- Records that show Plaintiff walked regularly for exercise, although at times she reported increased pain or symptoms interfering with her ability to walk as long as or as much as she wanted;

- Generally good control of her fibromyalgia;

- Only one complaint of hip problems to her treating doctors after the alleged onset date;

- Normal hip X-rays and normal bilateral hip range of motion at the consultative examination, although she did complain of pain;

- Plaintiff's report to her doctor seven months after the consultative examination that she was increasing her walking, which the ALJ said suggested her hip complaints may not have been as serious as alleged;

- X-rays that showed a pes planus deformity in her left foot and midtarsal joint range of motion that was consistent with instability, contrasted with a consistently normal gait, 5/5 strength in her extremities, and intact sensation;

- A largely normal right ankle X-ray despite right ankle edema and complaints of interior right ankle pain when walking;

- Recommendation of conservative treatment for ankle pain, including stretching, icing, and the use of orthotics;

- Increased ankle pain that still only reached a 2/10 in intensity;

- Treatment record noting that Plaintiff wore sandals to her podiatrist's appointment and did not use recommended orthotics. (R. 21-22.)

---

[5] In her Reply Plaintiff again lists evidence she contends the ALJ "failed to confront," but nearly all of the evidence she is recites is the ALJ's opinion; *i.e.,* the ALJ did not ignore or miss any it. (Doc. # 21: Pl. Reply, at 2-3). Instead, Plaintiff circles back to her contention that the ALJ did not explain "how" she could sustain the standing and walking requirements of light work despite this evidence. But we are satisfied that the ALJ built a logical bridge – to the extent that one is still required – from the evidence to his RFC, and more importantly, that substantial evidence supports his conclusion.

In this case, the ALJ has met that standard in supporting the RFC with substantial evidence and we will not overturn it.

The ALJ also properly considered Plaintiff's impairments – specifically her obesity – in combination when determining her RFC. Notably, as the Commissioner points out, while Plaintiff suggests generally that fibromyalgia symptoms can be exacerbated by obesity, she points to no evidence showing that was the case for her or suggest what obesity-related limitations are supported by the evidence beyond those included in the RFC. (Def. Resp. to Mot. for Sum. J. at 6). *Pepper v. Colvin*, 712 F.3d 351, 365 (7th Cir. 2013).

The ALJ acknowledged Plaintiff's obesity at several places in the opinion and specifically noted that he took into account her obesity in combination with her other impairments when determining the RFC, and also that her obesity did not elevate Plaintiff's other impairments to the Listing level. (R. 17, 25.) Moreover, the state agency medical opinions also noted Plaintiff's obesity when formulating their RFCs, and the ALJ considered reviewed these opinions and then actually reduced them to account for additional of Plaintiff's limitations. The ALJ did not err in consideration of Plaintiff's obesity.

Finally, Plaintiff argues that the ALJ ignored an entire line of evidence related to Plaintiff's alleged difficulties (due to fibromyalgia and arthritis) with handling and fingering, and therefore erred by not including manipulative limitations in the RFC. (Pl. Mem. at 5-6). She points out that she complained of hand pain in her July 2020 Function Report, and to the consultative examining doctor, who noted reduced grip strength and mild difficulty with certain manipulative activities such as opening a door using a knob, picking up a coin or pen, and trying shoelaces, and that she also complained of thumb pain to a doctor in February 2021.

7

But the ALJ did not ignore evidence of Plaintiff's hand and thumb pain and limitations. He acknowledged that Plaintiff complained of thumb weakness and pain at one medical appointment and noted that an X-ray showed moderate degenerative changes in the thumb joint. (R. 16.) However, in finding that Plaintiff's thumb pain was not a severe impairment, the ALJ explained that Plaintiff complained of thumb and hand pain infrequently, specifically stating that "outside of one examination showing mild tenderness to palpation and minimal discomfort or pain, it does not appear that she complained of hand difficulties to her treatment providers in subsequent visits." (*Id.*) The ALJ also discussed at several places in the opinion that Plaintiff's allegations about difficulties with her hands are belied by her continued ability to drive regularly, shop, engage in hobbies such as crochet and playing board games, do "low intensity gardening," and take care of her grandchildren on a daily basis. (R. 21-22.) Finally, when explaining why he gave Plaintiff's treating doctor's opinion no weight, the ALJ explained that in the same examination in which the Dr. Johnson opined Plaintiff could handle and finger only five percent of the workday, "the physical examination revealed no abnormalities other than BMI of 36 and low pulse, consistent with the claimant's history, and the claimant stated "she is doing well" and "verbalizes no concerns today."" (R. 24.) In this case, the Court finds there is substantial evidence to support the determination, "even if reasonable minds could differ." *Elder v. Astrue,* 529 F.3d 408, 413 (7th Cir. 2018).

Accordingly, Plaintiff's arguments concerning the RFC amount to nothing more than a disagreement with the way the ALJ weighed the evidence, which is not a ground for remand. *Bakke v. Kijakazi,* 62 F.4th 1061, 1070, (7th Cir. 2023) ("Where ALJ clearly notes all the evidence-that which supports his conclusion and that which undermines it-we cannot replace his judgment with ours.) In finding that the ALJ's conclusions and the RFC were supported by substantial evidence,

8

we want to again acknowledge Plaintiff's arguments with respect to whether the ALJ built a "logical bridge," insofar as the Seventh Circuit's conception of what this "logical bridge" is and what ALJs must go through to build it is, at the very least, evolving. Recent case law, and in particular *Warnell*, has added considerable clarity. In *Warnell*, the Seventh Circuit indicated that the logical bridge is not so much a requirement as much as it is a way that our court of appeals has described, in a "shorthand" fashion, the need for ALJs to explain the linkage between the evidence and the conclusion. Because we find that substantial evidence supports the ALJ's conclusion here, that linkage is established.

      **B.    Substantial Evidence Supports the ALJ's Consideration of Plaintiff's Moderate Limitations in Concentration, Persistence, and Pace.**

Plaintiff argues that the RFC's limitation to simple job instructions in a routine work setting with few, if any, changes, did not adequately account for her moderate limitations in concentration, persistence, and pace. The Court disagrees and finds that substantial evidence supports the ALJ's consideration of Plaintiff's mental impairments.[6] The Seventh Circuit has held that an RFC that limits a claimant to simple, routine work may account for moderate limitations in concentration, persistence, and pace as long as it adequately accounts for the claimant's symptoms as supported by the record. *Urbanek v. Saul*, 796 F. App'x 910, 914 (7th Cir. 2019) (quoting *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019)) ("Indeed, '[e]ven generic limitations, such as limiting a claimant to simple, repetitive tasks, may properly account for moderate limitations in concentration,

---

[6] Defendant argues that Plaintiff did not carry her burden with respect to her arguments about her mental impairments because she did not suggest any additional work restrictions that she needed because of her moderate limitations in concentration, persistence, and pace. (Def. Resp. at 8). In her Reply, Plaintiff points to her testimony that her trouble with concentration and memory caused her to need more time to complete tasks and argues that this adequately identified what type of limitation she needed. (Reply at 7). Giving Plaintiff the benefit of the doubt, we accept that she met her burden of identifying a possible work limitation, but as we explain above, we find that substantial evidence supports the ALJ's RFC determination as written, and he did not err by not including the need to take extra time to complete tasks in it.

persistence, and pace, so long as they 'adequately account for the claimant's demonstrated psychological symptoms' found in the record.")

The ALJ offers a number of reasons for his RFC determination with respect to Plaintiff's mental limitations. He acknowledged her testimony that she had general problems concentrating, focusing, and completing tasks, and contrasted that with her statements that she also drives, prepares meals, watches TV, reads, plays games, manages funds, uses the internet, and handles her own medical care. He also points out elsewhere in the opinion that Plaintiff cared for her two grandsons on a daily basis to such an extent that the State of Illinois paid her for her work. (R. 19.) When discussing her allegations of fibro fog, cognitive disfunction, and memory issues, the ALJ noted that medical records show intact mental status examination, adequate memory, intact calculation ability, no evidence of a thought disorder, and the ability to perform abstraction. (R. 18.) He specifically noted that her "alleged fibro fog, and trouble concentrating and remembering due to anxiety, depression, and pain was further accommodated by restricting her to only simple job instructions in a routine work setting with few, if any, changes." (R. 20.)[7]

Despite this explanation, Plaintiff argues that the ALJ's consideration of the evidence was erroneous. Specifically, she points to her testimony about "fibro fog" causing difficulty with memory and concentration and contends the ALJ failed to account for these symptoms. Further, she argues that because the non-narrative part of the state agency psychologists' opinions found

---

[7] The ALJ gives further explanation about his analysis of the evidence with respect to Plaintiff's mental RFC, noting: "After careful consideration of the evidence of record, the undersigned finds that the claimant has continued since the alleged onset date to engage in a wide range of daily activities and her treatment providers have all indicated stable conditions." No treatment provider "observe[d] distractibility, difficulty concentrating or understanding during treatment visits, changes in mood/affect, or cognitive dysfunction." At the consultative examination she was "fully oriented, calm, showed bright affect, and exhibited no evidence of a formal thought disorder or distractibility, trouble focusing, concentrating, or maintaining attention. The mental status examination was essentially normal." (R. 21.)

10

her to have moderate limitations in maintaining attention and concentration for extended periods, maintaining regular attendance, and being punctual (but no limitations in carrying out short and simple instructions), the ALJ's failure to account for those specific limitations in the RFC was error.[8]

Plaintiff's arguments, which she again couches in terms of the ALJ's supposed failure to build a logical bridge, are without merit. First, the ALJ's treatment of the state agency psychologists' opinions was supported by substantial evidence. While the ALJ may not have explicitly explained why he did not include some of the checkbox limitations in the RFC, the Court can easily follow his reasoning from the evidence to the RFC. Specifically, the RFC tracks the narrative portion of the opinions, which states that "[c]laimant is fully oriented and is free of serious memory problems. Claimant can remember locations or work-like procedures and can also understand and remember short simple instructions although the individual has difficulty remembering detailed instructions. Claimant can carry out short and simple instructions . . . Claimant does not handle stress nor changes in routine well." (R. 74-75.) All of these limitations – that Plaintiff can perform simple work with few changes in routine – are the ones the ALJ included in the RFC and we find that substantial evidence supports that decision.

Even aside from the state agency opinions, the entirety of the ALJ's discussion about Plaintiff's mental limitations and concentration issues demonstrates that he considered how her "fibro fog" affected her concentration, and weighed that against evidence that she was nonetheless able to perform simple, routine tasks. From commentary about her demeanor during the hearing, to a discussion of the many daily activities she was able to perform that required concentration and

---

[8] This section of the state agency psychologist's opinion used to be displayed in "check box" form, but it now asks the consultative doctor to "rate" the individual's ability to perform various tasks related to concentration, persistence, and pace as to the level of limitation, but notes that "the actual mental residual functional capacity assessment is recorded in the narrative discussion." (R. 73.)

11

memory, to noting that the medical records reflect intact mental status examinations and calculation ability and adequate memory, the ALJ took Plaintiff's limitations from her "fibro fog" and other allegations of concentration difficulties into account when formulating the RFC.

### C. The ALJ Supported His Assessment of Plaintiff's Subjective Symptoms with Substantial Evidence.

The ALJ determined Plaintiff's subjective symptoms were not as severe as she alleged and provided a number of reasons to support his reasoning. Specifically, he pointed out that she cared for her two grandsons to a significant enough extent that the State paid her for the work, that her treatment providers have indicated her condition is stable,[9] that she testified she has adjusted well to her life with fibromyalgia, that she reported to her treating doctor that she was increasing her walking, that her doctors prescribed conservative treatment such as ice, stretching, and orthotics for her pes planus impairment, and that over-the-counter medications and heat worked to alleviate her pain symptoms. (R. 19-21.)

Plaintiff first argues that the ALJ improperly relied on a lack of objective medical evidence to support her allegations of pain, and that fibromyalgia pain in particular is not quantifiable by objective tests and evidence. (Pl. Mem. at 10). But while the ALJ did acknowledge a lack of objective medical evidence as one reason for his subjective symptom analysis, that is not all the ALJ did. Instead, after discussing Plaintiff's allegations of pain in general and explaining that he was reducing her RFC to account for some of her symptoms – in particular the intermittent "fibro fog" and flaring of pain – the ALJ considered the factors required by SSR 16-3p beyond the minimal objective evidence, including her daily activities, the effectiveness of treatment to manage

---

[9] Plaintiff argues that the fact that an impairment is "stable" does not necessarily equate to being able to work with it, only that it is not getting worse. While this may be true in a general sense, in this case, the ALJ noted that Plaintiff's fibromyalgia was stable in conjunction with his findings that she was able to work despite her disease; *i.e.,* it was not worsening, and in fact, was "controlled with minimal changes to the treatment regimen." (R. 22.)

her symptoms, evidence (such as her increase in walking and wearing of non-orthotic sandals to medical appointments), can conservative treatment.

The rest of Plaintiff's arguments amount to little more than a disagreement with the way the ALJ weighed the evidence. She points out that she needed help to perform many of her activities of daily living, that fibromyalgia pain waxes and wanes, suggesting that the ALJ improperly weighed her allegations of pain when comparing them to contrary evidence, and that the ALJ did not explain what kind of treatment someone with Plaintiff's alleged symptoms should receive. But the ALJ thoroughly considered and commented on these issues, and the fact that Plaintiff wishes he would have weighed the evidence differently is not a ground for remand.

## CONCLUSION

For the foregoing reasons, the Court denies Plaintiff's motion to reverse and remand the ALJ's decision (D.E. 15) and grants Defendant's motion to affirm the decision (D.E. 19).

**SO ORDERED.**

                                                **ENTER:**

                                        **GABRIEL A. FUENTES**
                                        **United States Magistrate Judge**

**DATED: June 24, 2024**